UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE LUIS GALINDO ARZATE,<br><br>Petitioner,<br><br>v.<br><br>TONYA ANDREWS, Administrator of Golden State Annex Detention Facility, POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office, TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States,<br><br>Respondents. | No. 1:25-cv-00942-KES-SKO (HC)<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Doc. 2 |

    Petitioner Jorge Luis Galindo Arzate is a 42-year-old noncitizen. Petitioner presents evidence that, in 2023, an immigration judge ordered him conditionally released from immigration detention after concluding that he was not a flight risk or danger to the community. Notwithstanding this order, on July 28, 2025, Immigration and Customs Enforcement ("ICE") agents rearrested petitioner when he appeared for a scheduled in-person check-in. Petitioner was later informed that he was being re-detained because local authorities had arrested him for a misdemeanor offense in July 2024, although no charges were ever filed against petitioner in that matter.

When the government conditionally releases an individual from physical restraint, that individual gains a constitutionally protected interest in his "continued liberty." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The government may not unilaterally take that liberty away. Typically, "the Constitution requires some kind of a hearing *before* the [government] deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).

On August 1, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. Plaintiff seeks an order (i) requiring respondents to immediately release petitioner from detention and reinstate his bond order, and (ii) enjoining respondents from re-detaining petitioner subject to further order. For the reasons set forth below, the Court grants petitioner's motion for temporary restraining order.

**I.     Background**

Petitioner is a 42-year-old citizen of Mexico who has resided in Fresno, California for most of his life. Pet. ¶¶ 25–31. His wife, five children, and five grandchildren are citizens of the United States. *Id.* ¶ 25; Doc. 2-1 at ¶ 19; Doc. 2-2 at ¶ 2; Doc. 2-3, Ex. A. He has extensive ties to the Fresno community: he is the lead foreman for a solar battery technology company, he regularly volunteers for the UFW Foundation and St. James Episcopal Cathedral, and he coaches a local soccer team. Doc. 2-1 at ¶¶ 19–20; Doc. 2-2 at ¶¶ 13–14; Doc. 2-3, Ex. A, Tabs B–F, H–S (letters from family and community members).

Petitioner first arrived in the United States when he was nine years old, and he attended elementary through high school in Fresno. *Id.* ¶ 26. When he was eighteen years old, he pled guilty to one count of misprision of a felony in violation of 18 U.S.C. § 4 and was sentenced to 21 months in prison, which he served. Doc. 2-3, Ex. A, Tab Y. In 2003, shortly after being released from prison, he was deported to Mexico but reentered illegally the same year. Doc. 2-3, Ex. A., Tab A at ¶ 6. Seventeen years later, in 2020, petitioner was detained and deported to Mexico again. *Id.* ¶ 7. While there, he lived with his brother-in-law in Sinaloa, but he fled back to the United States after someone murdered his brother-in-law in front of him and threatened his life. *Id.*

In February 2023, Immigration and Customs Enforcement ("ICE") agents arrested

petitioner, reinstated his prior removal order, and detained him at Golden State Annex in McFarland, California. *Id.* ¶ 8. Petitioner applied for withholding of removal and protection under the Convention Against Torture. *Id.* An immigration judge denied petitioner's application, and he timely appealed to the Board of Immigration Appeals, where his case remains pending. Doc. 2-3, Ex A, Tabs A, AA–BB; Doc. 2-3, Ex. G.

On August 3, 2023, after having spent six months in detention, petitioner was given a bond hearing before an immigration judge due to a preliminary injunction entered in a separate class action case. Pet. ¶ 32 n.2; Doc. 2-1 at ¶ 2; *see Aleman Gonzalez v. Sessions*, 325 F.R.D. 616 (N.D. Cal. June 5, 2018), *aff'd Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *rev'd and remanded on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). The immigration judge ordered that petitioner be released from detention upon the posting of a $5,000 bond because the government had not demonstrated that petitioner was a danger to the community or a flight risk. Doc. 2-3, Ex. B. The order specified that the government could utilize certain supervision measures other than electronic ankle monitoring. *Id.*

On August 4, 2023, petitioner posted bond and was released from detention. Doc. 2-1 at ¶¶ 2–3. Upon his release, ICE issued an Order of Supervision which required him to periodically report to the ICE field office in Fresno. Doc. 2-3, Ex. C. In compliance with the Order of Supervision, he appeared on August 8, 2023, and November 8, 2023. Doc. 2-1 at ¶¶ 3–4. When he appeared on November 8, 2023, ICE told him that his future supervision would be through the Intensive Supervision Appearance Program ("ISAP"). Doc. 2-1 at ¶ 4.

When his ISAP monitoring began, petitioner was required to report where and with whom he would live and work. *Id.* ¶ 5. From then on, he was required to complete virtual check-ins every Thursday, and he was also subject to random video calls in which he was required to report where he was and whom he was with. *Id.* He was required to download an app called SmartLINK to his cell phone which enabled ISAP officers to see his physical location during any virtual check-in. *Id.* ¶ 4; Alternatives to Detention, Immigrations and Customs Enforcement, https://www.ice.gov/features/atd. Additionally, he was subject to home visits, and during days when there would be a home visit, he was required to be home from 6 a.m. to 6 p.m. because

1     ISAP officers could show up at any time between those hours. *Id.* ¶ 6.

2            Petitioner's evidence indicates that petitioner complied with his ISAP requirements. *Id.*
3     ¶¶ 4–9; Doc. 2-2 at ¶ 3; Doc. 2-3, Exs. D–E (correspondence from ICE on December 8, 2023 and
4     November 20, 2024 confirming that petitioner had complied with the Order of Supervision). The
5     government granted petitioner lawful work authorization, and he returned to work in the solar
6     industry full-time. Doc. 2-1 at ¶ 2; Doc. 2-2 at ¶¶ 13–14; Doc. 2-3 at ¶ 4. In July 2024, petitioner
7     was arrested for a misdemeanor by local police in Las Vegas, Nevada, where he had traveled with
8     his wife after obtaining permission from ISAP officers. Doc. 2-1 at ¶¶ 15–16; Doc. 2-2 at ¶ 11.
9     Petitioner denied any wrongdoing, he was released within several hours, and no charges were
10    pursued against him. Doc. 2-1 at ¶¶ 16–17; Doc. 2-2 at ¶ 11; Doc. 2-3, Ex. I.

11           On July 24, 2025, during a weekly check-in, ISAP officers informed petitioner that he was
12    required to report to the ISAP office in Fresno on July 28, 2025 to discuss his passport. Doc. 2-1
13    at ¶ 7; Doc. 2-2 at ¶ 4. As petitioner did not have a passport, he scheduled a passport appointment
14    with the Mexican consulate, then contacted an ISAP officer to confirm whether he still needed to
15    appear in person for the visit. Doc. 2-1 at ¶ 7; Doc. 2-2 at ¶ 4. The ISAP officer told petitioner
16    that he was still required to appear in person and that the officer would explain more when
17    petitioner arrived. Doc. 2-1 at ¶ 7; Doc. 2-2 at ¶¶ 4–5; Doc. 2-3, Ex. F (text message
18    screenshots).

19           On July 28, 2025, ICE agents arrested petitioner when he appeared at the ISAP office as
20    instructed. Doc. 2-1 at ¶ 10; Doc. 2-2 at ¶ 6. Agents transported petitioner to the ICE field office
21    in Fresno. *Id.* ¶¶ 10–11. Petitioner's assigned deportation officer informed petitioner's wife that
22    petitioner was being detained due to the 2024 arrest in Las Vegas. Doc. 2-2 at ¶ 10.

23           On August 1, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a
24    motion for temporary restraining order, Doc. 2.

25    **II.    Legal Standard**

26           The standards for issuing a temporary restraining order and a preliminary injunction are
27    "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839
28    n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of

right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). The final two *Winter* factors merge "when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III.   Discussion

The Court finds that the requirements for issuing a temporary restraining order are met. *See* Fed. R. Civ. P. 65(b). Petitioner notified respondents' counsel on August 1, 2025 of the filing of the motion, *see* Doc. 2 at 6, and counsel for respondents filed a notice of appearance the same day, Doc. 5. While respondents have not filed a response, petitioner has set out specific facts demonstrating that immediate and irreparable injury, loss, or damage may result before respondents can be heard in opposition. *See Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting ex parte temporary restraining order in similar circumstances).

#### a.   Petitioner is Likely to Succeed on the Merits.

Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a bond hearing. Doc. 2 at 16–27. "Courts analyze [] due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process

1  Clause, and the second examines the procedures necessary to ensure any deprivation of that
2  protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-
3  TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*
4  *Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).  These two steps are examined in turn.

### 1. Petitioner Possesses a Protected Liberty Interest.

6  A protected liberty interest may arise from a conditional release from physical restraint.
7  *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to
8  arrest and detain an individual, a protected liberty interest under the Due Process Clause may
9  entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process
10 requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S.
11 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)
12 (same, in parole context).  To determine whether a specific conditional release rises to the level of
13 a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific
14 conditional release in the case before them with the liberty interest in parole as characterized by
15 *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation
16 marks and citation omitted).

17 In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide
18 range of things open to persons'" who have never been in custody or convicted of any crime,
19 including to live at home, work, and "be with family and friends and to form the other enduring
20 attachments of normal life." *Morrissey*, 408 U.S. at 482.  "Though the [government] properly
21 subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring
22 and seeking authorization to work and travel, "his condition is very different from that of
23 confinement in a prison." *Id.*  "The parolee has relied on at least an implicit promise that parole
24 will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole
25 undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a
26 parolee possesses a protected liberty interest in his "continued liberty." *Id.* at 481–84.

27 Petitioner's conditional release is similar.  It allows him to be with his family and
28 contribute to the community where he has spent most his life, under certain terms of supervision.

Here, the immigration judge ordered petitioner to be released on bond pending his immigration appeal. Petitioner's evidence indicates that he thereafter complied with his release conditions. Nonetheless, the government rearrested petitioner without a new bond hearing before the immigration judge, which plainly contradicts the "implicit promise that [petitioner's bond] will be revoked only if he fails to live up to the [bond] conditions." *Morrissey*, 408 U.S. at 482.

The Court finds that petitioner has a protected liberty interest in his release as previously ordered by the immigration judge. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens out on bond have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner has been out of custody for over two years, and during that time, has cared for his five children and grandchildren, lawfully worked

7

full-time, and volunteered in his community. His detention denies him that freedom. *See Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (analogizing to *Morrissey*).

Second, considering that petitioner "was previously found to not be a danger or a flight risk, the risk of erroneous deprivation" is particularly high if, as is the case now, no hearing has been provided. *Garcia*, 2025 WL 1927596, at *5. Petitioner was arrested without notice while appearing for a check-in with ICE and was not provided any procedural safeguards to determine whether the circumstances had changed such that his re-detention was justified.

There are numerous reasons to doubt that petitioner's detention is justified. Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). In 2023, an immigration judge concluded that petitioner was not a flight risk or danger. The only change in circumstances appears to be petitioner's misdemeanor arrest in 2024. Doc. 2-3, Ex. B. However, following his arrest, petitioner was promptly released and no charges were filed. Doc. 2-1 at ¶ 16; Doc. 2-2 at ¶ 11; Doc. 2-3, Ex. I. "[P]ublic safety is not jeopardized by [someone who has only been arrested for a nonviolent misdemeanor] and has never even been charged with a crime." *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8 (E.D. Cal. Apr. 17, 2025); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) (explaining that an immigration judge's prior determination that petitioner was not a flight risk or danger had "largely borne out" because petitioner had only been arrested for a misdemeanor in the interim). This apparent lack of justification is a strong indication that the risk of erroneous deprivation is high, and "allowing a neutral arbiter to review [these] facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R.*, 2025 WL 1983677, at *4.

Third, the government's interest in detaining petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. The government's interest is further diminished where a person "has consistently

8

appeared for [his] immigration hearings," *Pinchi*, 2025 WL 1853763, at *2, as it appears that petitioner has done.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process required a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

It is true that *Morrissey* permits the arrest of someone pending the final revocation of parole, with a prompt hearing to follow. *See Morrissey*, 408 U.S. at 485–86. But "decisions defining the constitutional rights of prisoners establish a *floor* for the constitutional rights of [noncitizens in immigration custody]," who are "most decidedly entitled to *more* considerate treatment than those who are criminally detained." *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8188563, at *5 (D. Ariz. Nov. 18, 2016) *aff'd sub nom*. *Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) (cleaned up) (emphasis added); *see Ortega*, 415 F. Supp. 3d at 970 ("Given the civil context [of immigration detention], [petitioner's] liberty interest is arguably greater than the interest of parolees in *Morrissey*."); *see also Zadvydas*, 533 U.S. at 690 ("[G]overnment detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." (internal citations and quotations omitted)).

Here, the government's justification for detaining petitioner appears to be a misdemeanor arrest that occurred over one year ago in a matter in which petitioner was not charged. Petitioner

presents evidence that, since then, immigration authorities have twice taken his fingerprints to confirm his compliance with his Order of Supervision. Doc. 2-3 at ¶ 4. Moreover, in November 2024 — over four months *after* petitioner's misdemeanor arrest — petitioner's supervisory detention and deportation officer confirmed in writing that "as of November 20, 2024, [petitioner] is compliant with the terms of his supervision." Doc. 2-3, Ex. E at 111.

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *E.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Singh*, 2025 WL 1918679, at *8–9; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winters* factor, the Court notes that "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972). Thus, petitioner faces irreparable harm absent a temporary restraining order.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above,

the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. Respondents are ordered to release petitioner immediately. They may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before an immigration judge that petitioner is a flight risk or danger to the community. Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL 1918679, at *9.

///

///

///

///

### IV. Conclusion and Order

Accordingly, petitioner's motion for temporary restraining order, Doc. 2, is GRANTED. Respondents are ORDERED to immediately release petitioner from custody and to reinstate his bond order.

Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without first providing petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his re-detention is warranted.

Respondents may move for modification or dissolution of this Order on two (2) days' notice. *See* Fed. Rule Civ. P. 65(b); Local Rule 231(c)(8).

Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary injunction should not issue pending a final disposition of this matter. The hearing on the order to show cause will be held on August 18, 2025 at 1:30 p.m. in Courtroom 6 before District Judge Kirk E. Sherriff. Respondents shall file a response to petitioner's motion by August 11, 2025, at 4:00 p.m. Petitioner may file a reply by August 13, 2025, at 4:00 p.m. The parties may stipulate to an extended briefing schedule and hearing date, provided that the parties also stipulate that the temporary restraining order will continue in effect until that hearing date.

IT IS SO ORDERED.

Dated:   August 4, 2025

UNITED STATES DISTRICT JUDGE