# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE LUIS GALINDO ARZATE, | No. 1:25-cv-00942-KES-SKO (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PRELIMINARY INJUNCTION |
| TONYA ANDREWS, Administrator of Golden State Annex Detention Facility, POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office, TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement, KRISTI NOEM, Secretary of the United States Department of Homeland Security, and PAMELA BONDI, Attorney General of the United States, | Docs. 2, 8, 10 |
| Respondents. | |

Petitioner Jorge Luis Galindo Arzate is a 42-year-old noncitizen. In 2023, an immigration judge ordered him conditionally released from immigration detention after concluding that he was not a flight risk or danger to the community. The government did not appeal that order to the Board of Immigration Appeals ("BIA"). The record reflects that petitioner thereafter complied with his release conditions. Nonetheless, on July 28, 2025, Immigration and Customs Enforcement ("ICE") agents rearrested petitioner when he appeared for a scheduled in-person check-in.

On August 1, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and an ex parte motion for temporary restraining order, Doc. 2. The Court granted petitioner's motion for

temporary restraining order on August 4, 2025, ordered the government to release petitioner from custody and reinstate his bond order, enjoined the government from rearresting him without first providing a bond hearing before an immigration judge where the government must prove by clear and convincing evidence that he is not a flight risk or danger to the community, and ordered the government to show cause why a preliminary injunction should not issue.  Doc. 8.   The government filed a response to the order to show cause on August 11, 2025, Doc. 10, petitioner filed a reply, Doc. 11, and the Court held a hearing on August 18, 2025, Doc. 13.  For the reasons set forth below, the Court enters a preliminary injunction.

**I.     Background**

Petitioner is a 42-year-old citizen of Mexico who has resided in Fresno, California for most of his life.  Pet. ¶¶ 25–31.  His wife, five children, and five grandchildren are citizens of the United States.  *Id.* ¶ 25; Doc. 2-1 at ¶ 19; Doc. 2-2 at ¶ 2; Doc. 2-3, Ex. A.  He has extensive ties to the Fresno community: he is the lead foreman for a solar battery technology company, he regularly volunteers for the UFW Foundation and St. James Episcopal Cathedral, and he coaches a local soccer team.  Doc. 2-1 at ¶¶ 19–20; Doc. 2-2 at ¶¶ 13–14; Doc. 2-3, Ex. A, Tabs B–F, H–S (letters from family and community members).

Petitioner first arrived in the United States when he was nine years old, and he attended elementary through high school in Fresno.  *Id.* ¶ 26.  When he was eighteen years old, he pled guilty to one count of misprision of a felony in violation of 18 U.S.C. § 4 and was sentenced to 21 months in prison, which he served.  Doc. 2-3, Ex. A, Tab Y; Doc. 10-1 at ¶ 6.  In 2003, shortly after being released from prison, he was deported to Mexico but reentered illegally the same year.  Doc. 2-3, Ex. A., Tab A at ¶ 6; Doc. 10-1 at ¶¶ 7–9.  Seventeen years later, in 2020, petitioner was detained and deported to Mexico again.  Doc. 2-3, Ex. A., Tab A at ¶ 7; Doc. 10-1 at ¶ 9. While there, he lived with his brother-in-law in Sinaloa, but he fled back to the United States after someone murdered his brother-in-law in front of him and threatened his life.  Doc. 2-3, Ex. A., Tab A at ¶ 7.

In February 2023, Immigration and Customs Enforcement ("ICE") agents arrested petitioner, reinstated his prior removal order, and detained him at Golden State Annex in

McFarland, California. *Id.* ¶ 8; Doc. 10-1 at ¶ 10. Petitioner applied for withholding of removal and protection under the Convention Against Torture. Doc. 2-3, Ex. A., Tab A at ¶ 8; Doc. 10-1 at ¶ 10. An immigration judge denied petitioner's application, and he timely appealed to the BIA, where his case remains pending. Doc. 2-3, Ex A, Tabs A, AA–BB; Doc. 2-3, Ex. G; Doc. 10-1 at ¶¶ 11–12.

On August 3, 2023, after having spent six months in detention, petitioner was given a bond hearing before an immigration judge due to a preliminary injunction entered in a separate class action case. Pet. ¶ 32 n.2; Doc. 2-1 at ¶ 2; Doc. 10-1, Ex. 5; *see Aleman Gonzalez v. Sessions*, 325 F.R.D. 616 (N.D. Cal. June 5, 2018), *aff'd Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *rev'd and remanded on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). The immigration judge ordered that petitioner be released from detention upon the posting of a $5,000 bond because the government had not demonstrated that petitioner was a danger to the community or a flight risk. Doc. 2-3, Ex. B; Doc. 10-1, Ex. 5. The order specified that the government could utilize certain supervision measures other than electronic ankle monitoring. Doc. 2-3, Ex. B; Doc. 10-1, Ex. 5. The government did not appeal the immigration judge's order to the BIA. Doc. 2-3 at ¶ 3.

On August 4, 2023, petitioner posted bond and was released from detention. Doc. 2-1 at ¶¶ 2–3. Upon his release, ICE issued an Order of Supervision which required him to periodically report to the ICE field office in Fresno. Doc. 2-3, Ex. C. In compliance with the Order of Supervision, he appeared on August 8, 2023, and November 8, 2023. Doc. 2-1 at ¶¶ 3–4. When he appeared on November 8, 2023, ICE told him that his future supervision would be through the Intensive Supervision Appearance Program ("ISAP"). Doc. 2-1 at ¶ 4.

When his ISAP monitoring began, petitioner was required to report where and with whom he would live and work. *Id.* ¶ 5. He was required to complete virtual check-ins every Thursday, and he was also subject to random video calls in which he was required to report where he was and whom he was with. *Id.* He was required to download an app called SmartLINK to his cell phone which enabled ISAP officers to see his physical location during any virtual check-in. *Id.* ¶ 4; Alternatives to Detention, Immigrations and Customs Enforcement,

3

1  https://www.ice.gov/features/atd.  Additionally, he was subject to home visits, and during days

2  when there would be a home visit, he was required to be home from 6 a.m. to 6 p.m. because

3  ISAP officers could show up at any time between those hours.  *Id.* ¶ 6.

4     Petitioner complied with his ISAP requirements.  *Id.* ¶¶ 4–9; Doc. 2-2 at ¶ 3; Doc. 2-3,

5  Exs. D–E (correspondence from ICE on December 8, 2023, and November 20, 2024, confirming

6  that petitioner had complied with the Order of Supervision). The government granted petitioner

7  lawful work authorization, and he returned to work in the solar industry full-time.  Doc. 2-1 at

8  ¶ 2; Doc. 2-2 at ¶¶ 13–14; Doc. 2-3 at ¶ 4.  In July 2024, petitioner was arrested for a

9  misdemeanor by local police in Las Vegas, Nevada, where he had traveled with his wife after

10  obtaining permission from ISAP officers.  Doc. 2-1 at ¶¶ 15–16; Doc. 2-2 at ¶ 11.  Petitioner

11  denied any wrongdoing, he was released within several hours, and no charges were pursued

12  against him.  Doc. 2-1 at ¶¶ 16–17; Doc. 2-2 at ¶ 11; Doc. 2-3, Ex. I.  Thereafter, ICE confirmed

13  on November 20, 2024 that petitioner was compliant with the terms of his supervision.  Doc. 2-3,

14  Ex. E.

15     On July 24, 2025, during a weekly check-in, ISAP officers informed petitioner that he was

16  required to report to the ISAP office in Fresno on July 28, 2025 to discuss his passport.  Doc. 2-1

17  at ¶ 7; Doc. 2-2 at ¶ 4.  As petitioner did not have a passport, he scheduled a passport appointment

18  with the Mexican consulate, then contacted an ISAP officer to confirm whether he still needed to

19  appear in person for the visit.  Doc. 2-1 at ¶ 7; Doc. 2-2 at ¶ 4.  The ISAP officer told petitioner

20  that he was still required to appear in person and that the officer would explain more when

21  petitioner arrived.  Doc. 2-1 at ¶ 7; Doc. 2-2 at ¶¶ 4–5; Doc. 2-3, Ex. F.  On July 28, 2025, ICE

22  agents arrested petitioner when he appeared at the ISAP office as instructed.  Doc. 2-1 at ¶ 10;

23  Doc. 2-2 at ¶ 6.  The government released petitioner on August 5, 2025, pursuant to this Court's

24  order.  Doc. 10 at 5.

25  **II.    Legal Standard**

26     "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

27  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

28  balance of equities tips in his favor, and that an injunction is in the public interest."  *Id.* at 20

4

(citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### III.   Discussion

#### a.   Likelihood of Success on the Merits

In its response to the order to show cause, the government contends that it was required to re-detain petitioner without a bond hearing because he is subject to mandatory detention under 8 U.S.C. § 1231(a)(2)(A). Doc. 10 at 2; Doc. 12, Ex. L at 7; *see* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the [government] *shall* detain the alien." (emphasis added)). The government is incorrect that this is the applicable statutory provision. Petitioner is subject to § 1231(a)(6), not § 1231(a)(2)(A). While § 1231(a)(2)(A) requires the government to detain noncitizens subject to its terms, § 1231(a)(6) provides the government with discretion to release. *See* 8 U.S.C. § 1231(a)(6) ("An alien . . . may be detained beyond the [90-day] removal period, [or] released . . . subject to [] terms of supervision."); *Arteaga-Martinez*, 596 U.S. at 578–79.

In general, "[s]ection 1231(a) applies to individuals[,]" like petitioner, "who are removed [from the United States] and who then reenter without authorization and apply for withholding of removal based on a fear that they will be persecuted or tortured if returned to their countries of origin." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022) (citing *Johnson v. Guzman Chavez*, 594 U. S. 523, 526 (2021)). For these individuals, § 1231(a)(2)(A) mandates detention during a 90-day "removal period." 8 U.S.C. § 1236(a)(2)(A); *see Johnson v. Arteaga-Martinez*, 596 U.S. at 578. But after that 90-day removal period concludes—in what is referred to as the "post-removal period"—the government's detention authority shifts to § 1231(a)(6). *See* 8

U.S.C. § 1231(a)(6); *Guzman Chavez*, 594 U.S. at 528–29.

The 90-day removal period "begins on '[t]he date the order of removal becomes administratively final.'" *Guzman Chavez*, 594 U.S. at 533 (quoting 8 U.S.C. §§ 1231(a)(1)(A)–(B), (2)). An order of removal becomes "administratively final" when "the agency's review proceedings" are complete. *See id.* at 534–35 (emphasis omitted). Given that ICE reinstated petitioner's prior order of removal in February 2023, *see* Doc. 12, Ex. L, the agency's review proceedings have been complete since February 2023. *See Guzman Chavez*, 594 U.S. at 533–35. The order of removal has thus "long been 'administratively final.'"[1] *Id.* Thus, the 90-day "removal period" has already lapsed, and petitioner is therefore in the "post-removal period" under § 1231(a)(6), which does not mandate detention. *See* 8 U.S.C. § 1231(a)(6); *Arteaga-Martinez*, 596 U.S. at 578–79. Because § 1231(a)(6) permits, but does not require, detention, the government is incorrect when it asserts that it was required to detain him.

Next, the government attempts to justify its decision to re-detain petitioner by asserting that petitioner received a bond hearing based on an interpretation of section 1231(a)(6) that the Supreme Court rejected in *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). *See* Doc. 10 at 9–10; *Aleman Gonzalez v. Sessions*, 325 F.R.D. 616 (N.D. Cal. 2018) (applying the canon of constitutional avoidance to construe 8 U.S.C. § 1231(a)(6) as requiring an individualized bond hearing for an alien detained for six months); *Rodriguez Diaz*, 53 F.4th at 1201 (explaining that "the Supreme Court [has since] rejected [the district court's and Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*"). The government conceded at the August 18, 2025 hearing, however, that the immigration judge's release order was valid when issued, that the government did not appeal that order to the BIA. Moreover, *Arteaga-Martinez* was decided in 2022, *before* petitioner's bond hearing in August 2023. The government has failed to adequately explain how its disagreement with the reasoning underlying the district court's preliminary injunction decision in *Aleman Gonzalez* could give ICE license to disregard the immigration judge's release order,

---

[1] This is true even though petitioner applied for withholding of removal because "an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal." *Guzman Chavez*, 594 U.S. at 540.

6

1  which the government has never appealed.

2  Petitioner argues that, in these circumstances, the Due Process Clause bars the government from re-detaining him without first providing a bond hearing where it must show that he is a flight risk or danger to the community. Doc. 2 at 16–27. "Courts analyze [] due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). These two steps are examined in turn.

### 1. Protected Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons'" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, "his condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole

7

1  will be revoked only if he fails to live up to the parole conditions." *Id.*  The revocation of parole

2  undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted).  Therefore, a

3  parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

4  Petitioner's conditional release is similar.  It allows him to be with his family and

5  contribute to the community where he has spent most his life, under certain terms of supervision.

6  Here, the immigration judge ordered petitioner to be released on bond pending his immigration

7  appeal.  The government declined to appeal that release order to the BIA.  Petitioner thereafter

8  complied with his release terms.[2]  Nonetheless, the government rearrested petitioner without a

9  new hearing, which contradicts the "implicit promise that [petitioner's bond] will be revoked only

10  if he fails to live up to the [bond] conditions." *Morrissey*, 408 U.S. at 482.

11  The government argues that reliance on *Morrissey* is misplaced because *Morrissey* arose

12  in the context of parole from a criminal conviction, not release from immigration detention.  But

13  just like a parolee, noncitizens are entitled to the protections of the Due Process Clause.

14  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (""[T]he Due Process Clause applies to all 'persons'

15  within the United States, including [non-citizens], whether their presence here is lawful, unlawful,

16  temporary, or permanent."); *see Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he

17  government's discretion to incarcerate non-citizens is always constrained by the requirements of

18  due process").  While it is true, as the government points out, that Congress may make "rules [as

19  to noncitizens] that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510,

20  521 (2003), legislatures may also make rules as to convicted criminals that would be unacceptable

21  if applied to law-abiding citizens, *see Morrissey*, 408 U.S. at 482 ("[T]he State properly subjects

22  [parolees] to many restrictions not applicable to other citizens . . . .").  As other courts have

---

[2] To the extent the government argues that petitioner's misdemeanor arrest, for which he was not prosecuted, violates his Order of Supervision, the government provides no support for that argument.  The government has not shown that petitioner committed a new crime.  Following his arrest, petitioner denied any wrongdoing, he was promptly released, and no charges were filed.  Doc. 2-1 at ¶ 16; Doc. 2-2 at ¶ 11; Doc. 2-3, Ex. I.  "The contention that an arrest, without more, constitutes evidence of criminal activity is without merit." *Duncan v. California*, No. S-04-523 LKK/PAN, 2006 WL 1883385, at *2 (E.D. Cal. July 7, 2006).  Moreover, ICE confirmed on November 20, 2024 – four months after the arrest – that petitioner was compliant with the terms of his supervision.  Doc. 2-3, Ex. E.

recognized in rejecting a similar argument, "[i]f a parolee serving out a sentence for a violent crime, and subject to highly restrictive conditions of release, has a sufficiently strong liberty interest[] to be entitled to a hearing prior to re-incarceration, then a non-citizen freed from civil detention on bond likely has a similar entitlement." *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *6 (N.D. Cal. July 17, 2025). "Given the civil context [of immigration detention], [petitioner's] liberty interest is arguably greater than the interest of parolees in *Morrissey*." *Ortega*, 415 F. Supp. 3d at 970.

The Court finds that petitioner has a protected liberty interest based on his significant time on release status, his family and community involvement during that period, and his compliance with the release terms as previously ordered by the immigration judge. *See id.* at *4 (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens out on bond have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

## 2. A Pre-Deprivation Bond Hearing Is Required

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

### i. Private Interest

Turning to the first factor, petitioner has a substantial private interest in remaining free

9

1   from detention.  "Freedom from imprisonment—from government custody, detention, or other
2   forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
3   *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner has been out of custody for over two
4   years, and during that time, has cared for his five children and grandchildren, lawfully worked
5   full-time, and volunteered in his community.  His detention denies him that freedom.

6         The government asserts that petitioner's private interest is low for three reasons, none of
7   which are persuasive.  First, the government argues that petitioner has an interest in avoiding
8   "prolonged detention" but "not detention itself."  Doc. 10 at 8–9.  But here, petitioner was already
9   detained for six months prior to the immigration judge's release order in 2023.  Petitioner's
10  challenge to his re-detention is also based on the extensive time that has passed on release status
11  prior to his re-detention.  "[A] released individual's interest in avoiding re-detention is different
12  from a detainee's interest in having ongoing periodic reviews of prolonged detention."  *Guillermo*
13  *M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *5 (N.D. Cal. July 17, 2025).  A
14  challenge to prolonged detention would normally occur after ICE detains an individual upon their
15  entry into the country, and in that situation, the individual has had no opportunity "to form the []
16  enduring attachments of normal life" in this country, nor has he been given an "implicit promise
17  that [his liberty] will be revoked only if he fails to live up to the [certain] conditions."  *Morrissey*,
18  408 U.S. at 482.  In contrast, a person who has been conditionally released from physical restraint
19  gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due
20  Process Clause.  *Id.*  "[R]evocation [of an individual's previously-granted freedom] implicates a
21  liberty interest that inheres in the Due Process Clause, and the denial of eligibility for [release]
22  does not."  *Guillermo M. R.*, 2025 WL 1983677, at *5 (quoting *Pruitt v. Heimgartner*, 620 F.
23  App'x 653, 657 (10th Cir. 2015)).

24        Next, the government points to the Ninth Circuit's decision in *Rodriguez Diaz v. Garland*,
25  where the court noted that the petitioner's "private interests [were] diminished by the fact that he
26  is subject to an order of removal from the United States."  *Rodriguez Diaz v. Garland*, 53 F.4th
27  1189, 1208 (9th Cir. 2022).  However, the court in *Rodriguez Diaz* noted that it was not
28  "seriously dispute[d] that Rodriguez Diaz has a legitimate and reasonably strong private liberty

interest under *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1208. There is also a critical distinction between petitioner's situation and that of the petitioner in *Rodriguez Diaz*. The petitioner in *Rodriguez Diaz* was detained during immigration proceedings because he was found to be a danger to the community; the issue was whether he was entitled to a further bond period after a period of detention. *Id.* at 1203. In contrast, petitioner was released over two years ago based on an immigration judge's finding that he was neither a flight risk or a danger, the government chose not to appeal that decision to the Board of Immigration Appeals, and petitioner has accrued a significant liberty interest during those two years. Petitioner's private interest is far stronger than that of the petitioner in *Rodriguez Diaz*.

Lastly, the government argues that petitioner's liberty interests are diminished because he is subject to mandatory detention and he received a bond hearing due to a preliminary injunction that was based on an interpretation of § 1231 that the Supreme Court has since rejected. Doc. 10 at 9. As explained earlier, under § 1231(a)(6), petitioner was subject to discretionary, not mandatory, detention. The government also acknowledges that the immigration judge's order was valid when issued and that the government did not appeal that order. Additionally, the proposition that "a mistakenly released prisoner does not have a legitimate claim of entitlement to freedom . . . cannot be squared with established law." *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017). "When a person lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was prematurely released, the prospect of re-incarceration has implications both for him and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Id.* at 683.

### ii.   Risk of Erroneous Deprivation

The government argues that there is no risk of erroneous deprivation because, under the statute, "a noncitizen who is the subject of a reinstated removal order is not entitled to any detention-related hearing before an Immigration Judge, predeprivation or post-deprivation." Doc. 10 at 11 (emphasis omitted). This argument fails to address petitioner's as-applied due process challenge. The focus of this *Mathews* factor is "the risk of an erroneous deprivation of [petitioner's private] interest through the procedures used, and the probable value, if any, of

11

1  additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The government's
2  argument that petitioner is not entitled to a bond hearing under the terms of the statute would
3  make it more likely that his private interest will be deprived without justification, *i.e.*, without a
4  determination that he is presently a flight risk or danger to the community, particularly as the
5  immigration judge previously found petitioner not to be a danger or a flight risk.

6  In 2023, an immigration judge concluded that petitioner was not a flight risk or danger.
7  The only change in circumstances appears to be petitioner's misdemeanor arrest in 2024. Doc. 2-
8  3, Ex. B. However, following his arrest, petitioner was promptly released and no charges were
9  filed. Doc. 2-1 at ¶ 16; Doc. 2-2 at ¶ 11; Doc. 2-3, Ex. I. "[P]ublic safety is not jeopardized by
10 [someone who has only been arrested for a nonviolent misdemeanor] and has never even been
11 charged with a crime." *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *8
12 (E.D. Cal. Apr. 17, 2025); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at
13 *5 (E.D. Cal. Mar. 3, 2025) (explaining that an immigration judge's prior determination that
14 petitioner was not a flight risk or danger had "largely borne out" because petitioner had only been
15 arrested for a misdemeanor in the interim). This apparent lack of justification is a strong
16 indication that the risk of erroneous deprivation through the procedures used is high, and
17 "allowing a neutral arbiter to review [these] facts would significantly reduce the risk of erroneous
18 deprivation." *Guillermo M. R.*, 2025 WL 1983677, at *4.

19 The government argues that this reasoning "downplays the significance of an arrest."
20 Doc. 10 at 11. But "[t]he contention that an arrest, without more, constitutes evidence of criminal
21 activity is without merit." *Duncan v. California*, No. S-04-523 LKK/PAN, 2006 WL 1883385, at
22 *2 (E.D. Cal. July 7, 2006). The government has also presumably known about petitioner's arrest
23 since at least November 2024. Petitioner's evidence, which the government does not dispute,
24 shows that ICE took his fingerprints on September 2024 to confirm his compliance with his Order
25 of Supervision. Doc. 2-3 at ¶ 4. Thereafter, ICE confirmed that petitioner was in compliance
26 with all release conditions. Doc. 2-3, Ex. E at 111.

27
28

### iii. Government's Interest

Third, the government's interest in detaining petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. The government asserts that detention, in general, "'increas[es] the chance that, if ordered removed, the alien[] will be successfully removed.'" Doc. 10 at (quoting *Rodriguez Diaz*, 53 F.4th at 1208). This argument, however, ignores the specific circumstances in the record in this case, which are that an immigration judge previously determined that petitioner was not a flight risk, petitioner has consistently shown up for his check-ins and hearings, and petitioner has complied with the terms of supervision. In such circumstances, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process required a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782. Many courts have recognized that this line of cases applies in the context of immigration detention. *See, e.g.*, *Guillermo M. R.*, 2025 WL 1983677, at *6; *Maklad v. Murray*, No. 1:25-cv-00968 JLT EPG, 2025 WL 2373425, at *9 (E.D. Cal. Aug. 14, 2025).

Given the absence of "evidence of urgent concerns, . . . a *pre*-deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district

13

courts have reached a similar conclusion. *E.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Singh*, 2025 WL 1918679, at *8–9; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

With these considerations in mind, petitioner is likely to succeed on the merits.

### b. Irreparable Harm

Turning to the second *Winters* factor, the government asserts that petitioner "cannot establish irreparable harm because he is being detained as expressly required by 8 U.S.C. § 1231(a)." Doc. 10 at 12. As explained above, petitioner's detention is not required by the applicable statutory provision, § 1231(a)(6). But even if it were, this argument fails to address the fact that petitioner brings an as-applied constitutional challenge to his detention. As explained above, petitioner was re-detained without a hearing to determine if his detention was justified and has shown that this likely violated his due process rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Thus, petitioner faces irreparable harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). The government asserts that these factors weigh in its favor because it needs to protect the public given petitioner's nearly twenty-four year old criminal conviction, immigration history, and recent arrest. *See* Doc. 10 at 12–13. However, an immigration judge considered petitioner's decades-old criminal conviction and immigration history and determined petitioner was not a danger to the community,

1  petitioner's arrest did not result in any charges.  As petitioner will suffer irreparable harm if he is
2  detained without a hearing in violation of his due process rights, the Court concludes "that the
3  balance of hardships tips decidedly in [petitioner's] favor." *Id.*

4  The public interest also weighs in petitioner's favor.  "The public has a strong interest in
5  upholding procedural protections against unlawful detention, and the Ninth Circuit has
6  recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL
7  1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)
8  (N.D. Cal. Mar. 1, 2021)); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,
9  838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's
10 constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

11 In conclusion, the Court finds that the requirements for issuing a preliminary injunction
12 are met.  Petitioner's immediate release was required to return him to the status quo ante—"the
13 last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at
14 *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar.
15 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18,
16 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-
17 CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v.
18 Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).
19 Respondents may not re-detain petitioner unless the government proves by clear and convincing
20 evidence at a bond hearing before a neutral arbiter that petitioner is a flight risk or danger to the
21 community.

22 The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts
23 regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.
24 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL
25 1918679, at *9.
26 ///
27 ///
28 ///

### IV. Conclusion and Order

Accordingly, the Court enters a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without first providing petitioner with a bond hearing before a neutral arbiter at which the government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his re-detention is warranted.

IT IS SO ORDERED.

Dated:   August 19, 2025

UNITED STATES DISTRICT JUDGE